# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

PBM NUTRITIONALS, LLC

      Plaintiff,

v.                          Civil No. 3:09cv194

DORNOCH LTD for and on behalf
of Underwriting members of
Lloyd's syndicate 1209,

      Defendants.

## MEMORANDUM OPINION

This matter is before the Court on Defendant Dornoch, Ltd.'s MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THIS PROCEEDING (Docket No. 98). For the reasons set forth below, the MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THIS PROCEEDING (Docket No. 98) is granted in part and denied in part.

## BACKGROUND

PBM Nutritionals, LLC ("Nutritionals") produces powdered infant formula at its plant in Burlington, Vermont. (Second Am. Compl. at ¶ 9.) On January 22, 2009, a steam valve control failure caused damage to Nutritionals' filters, resulting in a sudden and dramatic increase in melamine and other filter materials in Nutritionals infant formula. (Id. at ¶¶ 12, 13.)

Dornoch Ltd. ("Dornoch"), through its managing agent, XL London Market Ltd., issued a Product Contamination Insurance Policy (the "Policy") to Nutritionals for the policy period March 17, 2008 to March 17, 2009. (Id. at ¶ 18.) According to Nutritionals, the Policy provides coverage for accidental product contamination which includes the loss sustained by Nutritionals as a result of the steam valve control failure. (Id. at ¶¶ 19, 21.) Nutritionals' damages under the Policy for the accidental contamination are in excess of $6 million. (Id. at ¶ 16.)

The Policy contains two provisions, a Service of Suit provision and Choice of Law and Jurisdictional Clause, that are relevant to this motion. The Service of Suit provision states:

> It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

(Policy at 26.)  The Choice of Law and Jurisdiction
Clause states:

> Unless otherwise stated herein:
> This Policy shall be construed according to
> the laws of the State of New York without giving
> consideration to principles of conflict of law,
> and the insured and Underwriters irrevocably
> consent to the jurisdiction of the United States
> District Court and the State courts of New York,
> agree that any action relating to any dispute
> under this Policy shall only be brought in said
> courts, consent to the exercise of *in personam*
> jurisdiction by said courts over it, and further
> agree that any action to enforce a judgment of
> the said courts may be instituted in any
> jurisdiction.

(Id. at 19.)  As provided in the Choice of Law and
Jurisdiction clause, New York law governs construction
of the parties' agreement.  (See id.)

Nutritionals alleges that it paid the premium due
under the Policy, complied with all conditions to coverage
under the Policy, timely notified Dornoch of the claim,
requesting coverage, and provided Dornoch with access to
the plant, equipment, and all other information needed to
investigate the claim.  (Second Am. Compl. at ¶¶ 22, 24,
28, 29.)  Nutritionals further alleges that Dornoch issued
a Reservation of Rights letter indicating its intent to
dispute coverage and, since April, 3, 2009, has refused to
investigate Nutritionals' claim.  (Id. at ¶ 29.)

3

On March 31, 2009, Nutritionals filed this action against four defendants, including XL Insurance America, Inc. ("XL Insurance"), seeking a declaratory judgment that one or more of the defendants are obligated to provide insurance coverage in connection with the accident. (Compl. at ¶ 2.) While the Complaint did not name Dornoch as a defendant, the Complaint referred to the Policy, which, in turn, mentioned Dornoch as an insurer. (Id. at ¶ 45; Def's Mot. at 4.) On April 6, 2009, Dornoch filed an action against Nutritionals in the United States District Court for the Southern District of New York, seeking a declaration of the rights of the parties under the Policy ("New York Action"). (Second Am. Compl. at ¶ 40; N.Y. Compl. at ¶ 1.) On April 13, 2009, Nutritionals amended its Complaint in this Court, adding Dornoch as a defendant. (See Am. Compl. at ¶ 9.) In addition, on May 22, 2009, Nutritionals filed, in the New York Action, a Motion to Dismiss, or in the alternative, a Motion to Transfer Venue to the Eastern District of Virginia. (N.Y. Def.'s Mot. at 1.) The Motion to Dismiss and Motion to Transfer Venue were denied. (N.Y. Op. at 2.)

On July 21, 2009, Nutritionals filed a Second Amended Complaint in which Dornoch was the only named defendant. (See Second Am. Compl.) The other insurers and

4

Nutritionals agreed to a dismissal without prejudice of this action so that the other insurers could complete their investigation and make a decision on coverage. In addition to its original count for a declaratory judgment, Nutritionals added a second count for breach of contract. (Id. at ¶¶ 37-42.) To support the breach of contract claim, Nutritionals alleges that it requested Dornoch to submit to this Court's jurisdiction by filing the Complaint, but that, rather than submitting to the jurisdiction of this Court pursuant to the Service of Suit provision, Dornoch instituted the New York Action, thereby breaching the contract. (Id. at ¶¶ 38, 40.) Finally, Nutritionals alleges that it is entitled to recover costs incurred defending against the New York Action as a result of the breach of contract. (Id. at ¶ 42.)

On July 31, 2009, Dornoch filed a Motion to Dismiss, or in the alternative, to Stay this Proceeding on the grounds that: (1) Nutritionals failed to join PBM Holdings, Inc. ("Holdings"), a necessary and indispensable party; (2) Count Two of the Second Amended Complaint fails to state a claim upon which relief can be granted; and (3) policy interests, discussed in Ellicott Mach. Corp. v. Modern

Welding Co., Inc.,[1] require that the action be dismissed or stayed. (See Def.'s Mot.) The Court denied Dornoch's Motion to Dismiss for Failure to Join an Indispensable Party on August 3, 2009. (Mem. Op. at 1.) Thus, the only remaining issues are whether Count Two of the Second Amended Complaint fails to state a claim on which relief may be granted, and whether the action should be dismissed or stayed pending resolution of the New York Action.

DISCUSSION

## I. The Motion to Dismiss under Rule 12(b)(6)

### A. The Legal Standard

A motion to dismiss under Rule 12(b)(6) seeks to test the legal sufficiency of the factual allegations made in the Complaint. The Court must take all factual allegations made in the Complaint as true, and must draw all reasonable and favorable inferences from those facts. Eastern Shore Markets, Inc v. JD Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). To survive a motion to dismiss, the Complaint must state the grounds of its entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). Furthermore,

---

[1] 502 F.2d 178 (4th Cir. 1974).

6

the facts, as they are plead, must raise the right to recovery above the speculative level.     Id.    Thus, the Complaint must allege enough facts to state a claim for relief that is plausible on its face.    Id. at 570; accord Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

Ordinarily, a court may not consider any documents that are outside of the Complaint in deciding a motion to dismiss, without converting the motion into one for summary judgment.    Witthohn v. Fed. Ins. Co., 164 Fed. Appx. 395, 396 (4th Cir. 2006).    Nevertheless, a court may consider official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint without converting the Motion to Dismiss into one for summary judgment, so long as the authenticity of such documents is not disputed.    Id.; see also Gasner v. Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995) (permitting the judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to the plaintiff's complaint).    Accordingly, such documents will be considered insofar as they are relevant to the disposition of Dornoch's Motion to Dismiss.

## B.    Count Two:   Breach of Contract

In Count Two, Nutritionals asserts a breach of contract claim against Dornoch.   Nutritionals alleges that,

by filing this action, it requested that Dornoch submit to the jurisdiction of a court of competent jurisdiction as provided by the Service of Suit clause. (Second Am. Compl. at ¶¶ 38, 39.) Nutritionals further alleges that, instead of submitting to this Court's jurisdiction, Dornoch filed the New York Action, a retaliatory suit, thereby breaching the contract. (Id. at ¶¶ 40, 41.)

Under New York law, the elements of a breach of contract are: (1) formation of a contract between plaintiff and defendant; (2) performance by plaintiff; (3) defendant's failure to perform; and (4) resulting damage. Clearmont Prop., LLC v. Eisner, 58 A.D.3d 1052, 1055, 872 N.Y.S.2d 725, 728 (N.Y. App. Div. 2009) (citing Hecht v. Components Int'l, Inc., 22 Misc.3d 360, 364, 867 N.Y.S.2d 889, 895 (N.Y. Sup. Ct. 2008)).

It is undisputed that a contract, the Policy, was formed between Nutritionals and Dornoch. Second Am. Compl. at ¶ 18. Nutritionals also alleges that it performed the contract by paying the total premium due under the Policy, complying with all conditions to coverage, timely notifying Dornoch of the accident and requesting coverage, and providing Dornoch access to the plant as well as all information necessary to the investigation of the claim. (Id. at ¶¶ 22, 24, 28, 29.) Nutritionals alleges that it

8

incurred damages because it was required to defend the New York Action. (Id. at ¶ 42.)

Thus, Nutritionals has satisfied three of the four elements of a breach of contract claim. However, as explained below, the Second Amended Complaint does not plead facts showing a failure to perform that raises the right to recovery above the speculative level.

First, the claim in Count Two runs afoul of the unambiguous language of the Policy when read as a whole. A court may dismiss a breach of contract claim under Rule 12(b)(6) if, "having given due consideration to the plaintiff's factual allegations, the court finds that the contract is unambiguous with respect to all of the plaintiff's breach of contract allegations." Turbomin AB v. Base-X, Inc., 2009 WL 1024713, at *2 (W.D. Va. 2009). A contract is unambiguous when its words "have a definite and precise meaning. . .concerning which there is no reasonable basis for a difference of opinion." Breed v. Ins. Co. of N. Am., 46 N.Y.2d 351, 355, 385 N.E.2d 1280, 1282 (N.Y. 1978).

To determine if a service of suit clause is ambiguous, the words in the contract must be given their plain meaning. Brooke Group Ltd. V. JCH Syndicate 488, 87 N.Y.2d 530, 534, 663 N.E.2d 635, 638 (N.Y. 1996); Columbia

Casualty Co. v. Bristol-Myers Squibb Co., 215 A.D.2d 91, 96, 635 N.Y.S.2d 173, 176 (N.Y. App. Div. 1995). Like all contracts, an insurance contract "must be read as a whole" and "each part interpreted with reference to the whole." Fleischer v. W.P.I.X. Inc., 30 Misc.2d 17, 23 213 N.Y.S.2d 632, 640 (N.Y. Sup. Ct. 1961). "[S]ingle clauses cannot be construed by taking them out of their context and giving them an interpretation apart from the contract of which they are a part." Eighth Ave. Coach Corp. v. City of New York, 286 N.Y. 84, 89, 35 N.E.2d 907, 909 (N.Y. 1941).

Nutritionals' claim is based on one part of the Service of Suit provision, which provides that Dornoch "will submit to the jurisdiction of a Court of competent jurisdiction within the United States."[2]  (Policy at 26.) However, the Service of Suit clause goes on to provide that "[n]othing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States."  (Id.)

---

[2] In Nutritionals' Response in Opposition to [Dornoch's] Motion to Dismiss or in the Alternative Motion to Stay, Nutritionals makes further allegations regarding Dornoch's failure to perform. For example, Nutritionals alleges that Dornoch breached the Service of Suit clause by filing three motions to dismiss in this action and by raising "a host of objections to other aspects of the case that has caused extensive unnecessary delay." (Pl.'s Response at 8.)  These allegations, however, are absent from Nutritionals' Second Amended Complaint.

Read as a whole, the plain meaning of the Service of Suit clause is unambiguous. While the Policy does require Dornoch to submit to the jurisdiction of a court of competent jurisdiction, Dornoch itself is also given the right to commence an action under the Policy. Therefore, under the unambiguous language of the Policy, Dornoch was permitted by the terms of the contract to commence the New York Action. Therefore, in so doing, Dornoch did not breach the Service of Suit clause.

Second, the law governing service of suit clauses also supports dismissal of the breach of contract claim. Generally, a service of suit clause "provides no more than a consent to jurisdiction." Brooke Group Ltd., 87 N.Y.2d at 534, 663 N.E.2d at 638; see also Columbia Casualty Co., 215 A.D.2d at 96, 635 N.Y.S.2d at 176 (noting that service of suit clauses have been interpreted as permissive consent-to-forum clauses rather than "mandatory and exclusive forum selection clause[s]."). As a mere consent to jurisdiction, a service of suit clause "does not bind the parties to litigate in a particular forum," Brooke Group Ltd., 87 N.Y.2d at 534, 663 N.E.2d at 638, **nor does it "bar subsequent actions commenced by the insurer. . .in a proper forum of the insurer's choice."** Columbia Casualty Co., 215 A.D.2d at 96, 635 N.Y.S.2d at 176 (emphasis

added); see also International Ins. Co. v. McDermott, 956
F.2d 93, 96 (5th Cir. 1992) (holding that a service of suit
clause "does not give the insured the right to prevent the
insurer from brining an action of its own, in a forum of
the insurer's choosing, against the insured.").

Because the Service of Suit clause does not bar
subsequent actions in a forum of the insurer's choice,
Dornoch did not breach the Service of Suit clause when it
filed the New York Action.

For the foregoing reasons,, Dornoch's Motion to
Dismiss Count Two under Rule 12(b)(6) will be granted.

## II.  The Motion to Dismiss under Ellicott Mach. Corp. v. Modern Welding Co., Inc.[3]

Dornoch moves to dismiss Count One and Count Two under
an unspecified doctrine of law.  Dornoch's brief, however,
seems to seek dismissal under the decision in Ellicott
Mach. Corp. v. Modern Welding Co., Inc., 502 F.2d 178 (4th
Cir. 1974).  Because Count Two will be dismissed as legally
insufficient, the remainder of the opinion addresses only
Count One.

In Ellicott, a contract dispute led Ellicott Machine
Corp. ("Ellicott") to file an action against Modern Welding
Co. ("Modern") in the United States District Court for the

_____

[3] 502 F.2d 178 (4th Cir. 1974).

District of Maryland ("Maryland Court"). Ellicott, 502 F.2d at 179. One week later, Modern filed an action against Ellicott based on the same transactions in the circuit court of Daviess County, Kentucky. Id.

After removing the case to the United States District Court for the Western District of Kentucky ("Kentucky Court"), Ellicott filed a motion to transfer that case to the Maryland Court, which the Kentucky Court denied. Id. When Modern later filed a motion to transfer in the Maryland Court, Ellicott responded by moving to enjoin Modern from "further prosecuting the Kentucky action." Id. at 180. The Maryland Court denied Modern's motion to transfer and granted Ellicott's motion to enjoin. Id.

On appeal, the Fourth Circuit held that, while generally, a case ought to be tried in the "district court in which it was first filed," the motion to enjoin should have been denied. Id. The Fourth Circuit concluded that Ellicott had "asked the district judge in Kentucky to exercise his discretion in granting or denying a motion for a change of venue," a decision which is "not appealable as a final judgment" under settled law. Id. The Fourth Circuit found that, by later filing a motion to enjoin in the Maryland Court, Ellicott in effect had appealed "from one district judge to another." Id. at 181. As a result,

the Fourth Circuit dissolved the injunction and stayed the proceedings in the Maryland Court. Id. at 182. The Fourth Circuit further held that the action in the Maryland Court should be dismissed only if "all matters in dispute are resolved by [the Kentucky] trial." Id.

In its Motion to Dismiss, Dornoch argues that, by pursuing an action in this Court, Nutritionals essentially has appealed the decision in the New York Action denying Nutritionals Motion to Transfer Venue to this Court. According to Dornoch, this "is precisely the type of procedural maneuvering that the Fourth Circuit refused to countenance" in Ellicott. (Def.'s Reply at 8.)

In response, Nutritionals argues that Ellicott is wholly inapplicable in this case because the Fourth Circuit's ruling was to dissolve an injunction rather than rule on a motion to dismiss. (Pl.'s Response at 10.) Nutritionals also contends that the effect of Ellicott was that the dispute in that case reverted to two separate courts. (Id.)

The holding in Ellicott does not require that this Court dismiss Nutritionals' remaining claim. As Nutritionals suggests, in Ellicott, the Court of Appeals did not dismiss the Maryland action. In fact, the Court of Appeals explicitly noted that it would only dismiss the

case if all matters were resolved by the Kentucky Court. Here, the remaining count has not been resolved in the New York Action. Thus, a dismissal of Nutritionals' entire action is unwarranted under Ellicott.[4]

## III. The Motion to Stay Proceedings

### A. Judicial Estoppel

As a preliminary matter, Nutritionals argues that Dornoch is judicially estopped from arguing that the current action is "separate and distinct" from the New York Action, precluding the need for a stay. (Pl.'s Resp. at 11.) That argument is not well-taken.

Judicial estoppel is an equitable doctrine invoked in the discretion of the court when a party attempts to "assert a position that is inconsistent with a prior position that the party has successfully asserted in another court." Lowery v. Stovall, 92 F.3d 219, 223 (4th Cir. 1996). The purpose of the doctrine is to prevent a party from "playing fast and loose with the courts" and to protect the "integrity of the judicial process." Id.

_____

[4] Moreover, Dornoch was able to file in the New York Action because Nutritionals inadvertently misnamed the insurer in the first Complaint. But for that misnomer, Dornoch's remedy was to move in this Court for relief under the Choice of Law and Jurisdiction Clause. Indeed, but for that misnomer, the New York Action would have been improper and likely would have been stayed until this Court resolved the issue presented by that clause. And, when Dornoch filed the New York Action, it well knew that it was going to be named in this action. That scenario further counsels against dismissal.

Judicial estoppel is available when three elements are satisfied. Id. at 223-24. First, the party to be estopped must seek to adopt a position that is factually inconsistent with a stance taken in prior litigation. Id. at 224; Lamonds v. Gen. Motors Corp., 34 F.Supp.2d 391, 394 (W.D. Va. 1999). Second, the prior inconsistent position or statement must have been accepted by the court. Lowery, 92 F.3d at 224. This, of course, ensures that judicial estoppel will be applied only in narrow circumstances. Id. Finally, the party to be estopped must have intentionally taken inconsistent positions to gain an unfair advantage. Id. at 223-24 (internal citations omitted); Lamonds, 34 F.Supp.2d at 394.

To satisfy the first element, Nutritionals asserts that Dornoch has taken inconsistent positions in this action and the New York Action that should prevent Dornoch from moving for a stay of this action. Nutritionals first points out that, in Dornoch's New York Complaint, Dornoch averred that "[a]n actual controversy exists between the parties regarding their respective rights and obligations under the relevant policies of insurance." (N.Y. Compl. at ¶ 9.) According to Nutritionals, this statement was accepted by this Court when it issued an Order which observed that:

> "one of the defendants has commenced a
> declaratory judgment action involving this matter
> in which it is asserted that there exists an
> actual case of controversy between that defendant
> and the plaintiff, and it being doubtful, under
> the circumstances of this case, that there can be
> a case or controversy regarding the plaintiff and
> one defendant but not a case or controversy
> involving the plaintiff and the other defendants
> . . .it is hereby ORDERED that each of the
> defendants [file] supplemental briefs regarding
> the existence of a case or controversy."

(Order at 2, June 10, 2009.)  Dornoch later asserted,
in this Court, that "[t]here is no case or controversy
between the parties."  (Def.'s Answer to Am. Compl. at
¶ 67.)

Dornoch's statements about the existence of a case or
controversy do not meet the test for judicial estoppel
because they are statements of law, rather than fact.
Dornoch was arguing that this Court lacked subject matter
jurisdiction under Rule 12(b)(1) because there was no case
or controversy.  (See id.)  In that context, the statement
suggests that Dornoch was arguing that no case or
controversy existed as a matter of law.

However, even if the statements are considered to be
factual in nature, the language of the Order makes it clear
that the Court did not accept the statement.  (See Order at
2, June 10, 2009.)  Instead, the Court simply acknowledged
Dornoch's assertion that there was a claim or controversy.

(Id.)  Thus, the statements about the existence of a case
or controversy cannot be used to estop Dornoch from moving
for a stay.[5]

Nutritionals  also  argues  that  Dornoch  should  be
judicially estopped from arguing that this action and the
New York Action are the same because Dornoch previously
admitted that the actions were "separate and distinct."
(Def.'s Opp'n to Mot. to Strike at 10.)  In its Opposition
to  [Nutritionals']  Motion  to  Strike  Second  Affirmative
Defense in this Court, Dornoch argued that "the New York
Action is the only action in which PBM's non-cooperation
has been raised as a claim or defense. . .The New York
Action unquestionably states an actual controversy between
all necessary parties and raises separate and distinct
coverage issues."  (Id. at 9-10.)  This statement was never
accepted by the Court, nor could it have been, because
Nutritionals' Motion to Strike was denied as moot before
the Court ever decided the issue.  (Order at 1, July 24,
2009.)

---

[5] It is correct that counsel for Dornoch could have made the distinction
more clearly and that some of Dornoch's assertions could be construed
as "playing fast and loose" with the concept of case or controversy.
And, as Nutritionals points out, he prohibition of such conduct is the
raison d'etre for the doctrine of judicial estoppel.    However,
considering Dornoch's papers as a whole, the Court elects to overlook
the parts of the presentation that gave rise to Nutritionals'
contention.

Lastly, Nutritionals argues that Dornoch admitted three times in the New York Action that the cases were separate and distinct actions:

- "[A] ripe matter for adjudication (namely, whether PBM Holdings and PBM Nutritionals have vitiated a right to coverage under the product contamination policy by failing to comply with a condition precedent to coverage by not cooperating with Underwriters' investigation) is only present in this action-not the Virginia Action." (N.Y. Pl.'s Mem. In Opp'n to Mot. To Dismiss at 1-2);

- "[Dornoch] note[s], however, that they agree when PBM commenced the Virginia Action there was no actual controversy ripe for adjudication because [Dornoch] had not yet come to a coverage determination…" (Id. at 11 n.4); and

- "We note that in this action there is an actual controversy between [Dornoch] and [Nutritionals] based on [Dornoch's] claim that [Nutritionals] has vitiated any right to coverage under the Policy by [Nutritionals'] failure to cooperate with [Dornoch's] investigation and the commencement of the Virginia Action." (Id. at 11 n.5.)

Nutritionals argues that these statements were accepted by the court presiding over the New York Action when it wrote that "the primary issue presented in this action is whether [Nutritionals] complied with a condition precedent to coverage under the Policy, and a determination as to that issue has no bearing on [Nutritionals'] rights under its other insurance policies." (N.Y. Op. at 10.)

Again, these statements fail the test for judicial estoppel because the court presiding over the New York Action did not accept that the action between Dornoch and Nutritionals in each court was separate and distinct. Rather, that court held that a determination by that court regarding Dornoch and Nutritionals would not affect Nutritionals' rights under its *other* insurance policies. (Id.) In making its finding, the court presiding over the New York Action was referring to the three other defendants originally joined in this action, not to the dispute between Dornoch and Nutritionals pending in this Court.

While Dornoch has made inconsistent statements, none of them satisfy the test for judicial estoppel. Thus, the doctrine of judicial estoppel cannot be applied to prohibit Dornoch from arguing that this action should be stayed.

   **B.   The Motion to Stay Legal Standard**

A motion to stay, though not expressly provided for by the Federal Rules of Civil Procedure, is a power inherent in the courts "under their general equity powers and in the efficient management of their dockets." Williford v. Armstrong World Industries, Inc., 715 F.2d 124, 127 (4th Cir. 1983); Aventis Pharma Deutschland GMBH v. Lupin Ltd., 403 F.Supp.2d 484, 489 (E.D. Va. 2005). In using its authority to grant a stay a court is given wide discretion

to "weigh competing interests and maintain an even balance." Landis v. N. Am. Co., 299 U.S. 248, 255 (1936); See also Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183-84 (1952). Courts may consider factors relevant to the stay, including whether all necessary parties are present in each action, convenience, and judicial economy and comity. See Int'l Nickel Co. v. Martin J. Barry, Inc., 204 F.2d 583, 585-586 (4th Cir. 1953).

Ultimately, the party seeking a stay "must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." Williford, 715 F.2d at 127. This requires a "clear case of hardship or inequity in being required to go forward." Landis, 299 U.S. at 255. If hardship or inequity cannot be shown, a stay is not merited. Aventis Pharma, 403 F.Supp.2d at 489.

C. **Factors Relevant to a Stay in this Action**

Here, the parties address only two factors relevant to whether a stay should be granted: the parties to each action involved and concerns about judicial economy and comity.

### 1. Parties to the Actions

In staying an action in favor of a concurrent action, a court may consider which parties are joined in each action. See Int'l Nickel, 204 F.2d at 585-86. Dornoch argues that this action should be stayed because it does not include Holdings, a necessary party. (See Def.'s Mot. at 13.) This Court recently denied Dornoch's Motion to Dismiss for failure to join Holdings as a necessary and indispensable party. (Mem. Op. at 1.) There, the Court found that Nutritionals and Holdings exist in privity and that, as a result, any judgment respecting Nutritionals will bind Holdings under the doctrine of res judicata. (Id. at 9.) Thus, Nutritionals and Dornoch are the only necessary parties to the action. Since both are parties to this action, this factor does not weigh in favor of granting the stay.[6]

### 2. Judicial Economy and Comity

Where two federal courts have concurrent jurisdiction over an action, the general principle is to avoid duplicative litigation. Colorado River Water Conservation

---

[6] After the stay issue was briefed, Nutritionals was given leave to file Third and Fourth Amended Complaints by which Nutritionals reinstated actions against the other insurers which, having now completed their respective investigations, have denied coverage. That development does not affect the analysis of the "parties" issue as presented in Dornoch's Motion or otherwise.

Dist. V. U.S., 424 U.S. 800, 817 (1976). Under this principle, a federal court has broad discretion "to stay its hand pending the outcome of another federal proceeding." United States v. SCM Corp., 615 F.Supp. 411, 416 (D. Md. 1985). Such deference ensures judicial efficiency and shows respect for other courts. Gray et al. v. Petoseed Co., Inc., 985 F.Supp. 625 (D.S.C. 1996). In this case, Nutritionals' Motion to Transfer Venue in the New York Action was denied and that court determined to exercise jurisdiction over the matter. (N.Y. Op. at 12-13.) Thus, this Court must carefully consider principles of comity in granting or denying a stay.

The first-filed rule is an important doctrine that is "illustrative of the applicability of the principle of comity." Gray, 985 F.Supp. at 633 n.9. The first-filed rule provides that, as a matter of "sound judicial administration," the first suit filed should have priority over the second, "absent the showing of balance of convenience in favor of the second action." Ellicott, 502 F.2d at 180 n.2 (citing Mattel, Inc. v. Louis Marx & Co., 353 F.2d 421, 423 (2d Cir. 1965)).

Here, on March 31, 2009, Nutritionals filed this action against XL Insurance rather than Dornoch. (Compl. at 1.) Dornoch filed the New York Action on April 6, 2009.

(See N.Y. Compl.) Nutritionals amended its Complaint in this Court on April 13, 2009, dismissing its claims against XL Insurance and adding Dornoch as a defendant. (See Am. Compl.) As a result, there is a question as to which suit was the filed first.

Fed. R. Civ. P. 15(a) provides that a party may amend its pleading once as a matter of course. FED. R. CIV. P. 15(a). An amendment adding a party relates back to the date of the original filing when: (1) the claim or defense asserted in the amended pleading arose out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the party to be brought in by the amendment received such notice of the action that it will not be prejudiced in defending on the merits; and (3) the party to be brought in knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. FED. R. CIV. P. 15(c)(1)(C); See also Goodman v. Praxair, Inc., 494 F.3d 458, 467 (4th Cir. 2007). Here, all elements are satisfied and Nutritionals' Amended Complaint relates back to the filing date of the Complaint, making it the first-filed.

First, the claim asserted in the amended pleading arose out of the same transaction set forth in the original pleading. In its Complaint, Nutritionals made reference

to, and even attached, the Policy that Dornoch had issued. (Compl. at ¶ 45; Compl. Ex. D; See also Def.'s Mot. at 4.) That Policy also formed the basis for the Amended Complaint against Dornoch.  Thus, the amended pleadings arose out of the same transaction set forth in the original pleading.

Second, Dornoch had sufficient notice of the Complaint in order to defend on the merits.  When Dornoch filed the New York Action, Dornoch stated: "On or about March 31, 2009, [Dornoch] learned that [Nutritionals] had filed a complaint in the United States District Court, Eastern District of Virginia, under index number 09CV194.  This Complaint does not name the proper parties but does reference the Policy."  (N.Y. Compl. at ¶ 16.)  Dornoch admits, therefore, in its own Complaint, that Dornoch not only had notice of Nutritionals' Complaint, but notice that Dornoch, rather than XL Insurance should have been named as a defendant.  Thus, Dornoch had notice and would not be prejudiced in defending on the merits.

Finally, as noted above, Dornoch knew that the action should have been brought against it.  The only remaining issue is whether Nutritionals was mistaken as to the identity of the proper party.  Neither party has addressed the reason that XL Insurance, rather than Dornoch, was an original party to this action.  This issue was addressed,

however, in the New York Action, wherein the court explained that XL Insurance was the "name of the specific insurer listed" in the Policy. (N.Y. Op. at 4.) Furthermore, the New York Court stated that, "after learning that XL Insurance did not write the policy in question" Nutritionals amended the complaint, adding Dornoch. (Id.) The facts articulated by the New York Court show that Nutritionals was mistaken as to the identity of the proper party. In addition, Dornoch's own Complaint, filed in the New York Action, shows that it knew of Nutritionals' mistake.

Thus, all of the elements of relation back are satisfied and the date of Nutritionals' Amended Complaint adding Dornoch as a defendant relates back to the filing date of the Complaint. Because Nutritionals filed its Complaint on March 31, 2009, before Dornoch filed on April 6, 2009, Nutritionals' Complaint is the first-filed.

In its pleadings, neither party addresses whether special circumstances favor the New York Action notwithstanding that this action was the first-filed. However, the New York Court did address this question. Though it declined to decide which action was the first-filed, that court found that special circumstances justified retaining jurisdiction in New York. (Id. at 5.)

Among these special circumstances were the fact that only six days passed from the filing of Nutritionals' Complaint to the filing of Dornoch's Complaint, the Choice of Law and Jurisdiction clause in the Policy, and finally, the fact that Holdings is not a party to the Virginia Action. (Id. at 7-8.)

Notwithstanding the close time frame in which the two complaints were filed, the Complaint in this action was filed first. In addition, this Court has previously concluded that Holdings was not a necessary party. Thus, these factors, standing alone, would not provide sufficient special circumstances to favor deference to the New York Action.

Nonetheless, on the facts presented here, Ellicott counsels in favor of a stay. In Ellicott, the Fourth Circuit explained that "a party seeking the exercise of a district court's discretion is ordinarily bound by that court's determination." Ellicott, 502 F.2d at 182. The Court of Appeals held that, while the first-filed rule "is a rule of sound judicial administration. . .it must yield in the face of the historic policy of the federal courts, expressed in 28 U.S.C. § 1291, that appeal will lie only from final decisions of the district courts and then only in the courts of appeal." Id. at 181 (further noting that

a party cannot "appeal from one district judge to another."). As a result, in Ellicott, the Fourth Circuit held that the Maryland Action, notwithstanding that it was the first-filed action, should be stayed. Id. at 182.

The assessment of special circumstances by the New York Court is controlling under the circumstances of this case because Nutritionals sought the exercise of the court's discretion in the New York Action when it filed a Motion to Dismiss or in the Alternative Motion to Transfer Venue. In ruling on those Motions, the New York Court assessed the convenience factors and special circumstances. (See N.Y. Op.) By reassessing these same factors for the purpose of this Motion to Stay, this Court would be effectively reviewing the decision in the New York Action.[7] This type of review is prohibited by Ellicott. Thus, Ellicott counsels that the Motion to Stay this action against Dornoch should be granted pending resolution of the New York Action.

This case presents a somewhat difficult decision if assessed in the fashion urged by Dornoch. On one hand, Dornoch has not shown hardship in attempting to justify a stay of this action. In addition, this action was the

---

[7] Considering the timing and nature of the decision in the New York Action, this Court's decision respecting PBM Holdings on an issue presented in a different context was not a review of the New York Court's decision.

first-filed. On the other hand, concerns about judicial economy and comity caution against proceeding in this Court when the New York Court already has determined to exercise jurisdiction. Because of the strong policy against duplicative litigation in two federal courts, and because of the Fourth Circuit's holding in Ellicott, which prohibits this Court from reviewing a decision made in the New York Action, this action should be stayed pending resolution of the New York Action.

Furthermore, the insurance contract at issue in this action specified that New York is the forum selected by the parties in which to resolve their contract disputes. The Service of Suit provision does not alter the Choice of Law and Jurisdiction provision that specifies New York as the appropriate venue. That rather clearly tips in favor of a stay, the balance of factors to be considered in exercising the discretionary power to stay.

## CONCLUSION

For the foregoing reasons, Dornoch's Motion to Dismiss will be granted with respect to Count Two but denied with respect to Count One, and Dornoch's Motion to Stay will be granted with respect to Count One.

It is so ORDERED.

/s/

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 8, 2009

30