IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PBM NUTRITIONALS, LLC,

    Plaintiff,

v.                          Civil Action No. 3:09cv194

ACE AMERICAN INSURANCE
CO., et al.,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on MOTION TO DISMISS OR STAY BY DEFENDANTS ACE AMERICAN INSURANCE COMPANY AND ARCH INSURANCE COMPANY (Docket Nos. 144 and 146). For the reasons set forth below, the motion will be granted in part and denied in part.

**BACKGROUND**

PBM Nutritionals, LLC ("PBM") produces powdered infant formula at its plant in Burlington, Vermont. (Fourth Am. Compl. at ¶ 10.) On January 22, 2009, a steam valve control failure caused damage to PBM's filters, resulting in a sudden and dramatic increase in melamine and other filter materials in PBM's infant formula, rendering it unusable. (Id. at ¶¶ 13-14.) PBM estimates damages in

excess of $6 million and has paid over $3 million in losses related to the accident to date. (Id. at ¶¶ 17-18.)

After the accident, PBM sought insurance coverage under three types of coverage and with four different insurers. The first type of coverage, commercial property damage and business interruption coverage, affords PBM $100 million in coverage with three insurers: (1) Ace American Insurance Co. ("Ace"), which provides a 50% share of the coverage pursuant to its Commercial Property Insurance Policy No. GPA D36015512 (the "Ace Policy"); (2) Arch Insurance Co. ("Arch"), which provides a 25% share of the coverage pursuant to its Commercial Property Insurance Policy No. PRP 0024475-01 (the "Arch Policy"); and (3) Lexington Insurance Co. ("Lexington"), which provides a 25% share of the coverage pursuant to its Commercial Property Insurance Policy No. 2141623 (the "Lexington Policy"). The basic terms of the three policies are the same and all of the policies ran from January 10, 2009 until January 10, 2010. (Def. Mem. at 3.)

PBM also has boiler and machinery coverage ("B&M Coverage"), which is found in Endorsement No. 009 to the Lexington Policy. (Id.) Endorsement No. 009, captioned "Equipment Breakdown Coverage Form," provides coverage for "accidents" to "covered equipment" as defined by the

2

endorsement. (Id.) The endorsement is not found in the Ace Policy or the Arch Policy. (Id.)

Finally, Dornoch Ltd. ("Dornoch") provides PBM with property contamination coverage for "accidental contamination" (the "Dornoch Policy"). (Id.) This policy ran from March 17, 2008 until March 17, 2009. (Id.)

On March 31, 2009, PBM filed this action against Ace, Arch, Lexington, and Dornoch, seeking a declaratory judgment that one or more of the defendants are obligated to provide insurance coverage in connection with the accident.[1] (Compl. at ¶ 2.) On October 8, 2009, the Court granted a stay of the action against Dornoch because of parallel litigation in the United States District Court for the Southern District of New York. (Docket No. 114.) And, on November 19, 2009, PBM dismissed Dornoch from this action.[2] (Docket No. 126.) Additionally, on December 2, 2009, the Court dismissed Lexington from the action for lack of jurisdiction.[3] (Docket No. 137.) PBM then filed an

---

[1] PBM later added claims against Dornoch for breach of contract, bad faith refusal to investigate and pay claim, and breach of fiduciary duty.

[2] PBM has now settled its claims against Dornoch. (Def. Mem. at 4.)

[3] PBM is a limited liability company whose members include trusts that CEO Paul Manning set up for his children. (Pl. Response at 7.) When the action was filed, counsel for PBM

3

action against Lexington in the Circuit Court for the City of Richmond. (Def. Mem. at 1.) Thus, the only remaining Defendants in this action are Ace and Arch (collectively the "Defendants") and the only remaining claim is the one for declaratory judgment.

The Defendants now file this Motion to Dismiss or Stay, arguing that only the Virginia state court can resolve all outstanding claims against the remaining insurance companies, and thus, abstention is appropriate. (Def. Mem. at 4-5.) The motion has been fully briefed and is ripe for decision.

## DISCUSSION

### I. The Legal Standard

The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). When relief is sought under the Declaratory Judgment Act a court is "under no compulsion" to exercise jurisdiction. <u>Brillhart v. Excess Ins. Co. of America</u>, 316 U.S. 491, 494 (1942). And, "[i]n the declaratory judgment

---

had been advised that the trusts were administered in Virginia. (<u>Id.</u>) Several months later, after filing, counsel learned that the trustee had been changed, destroying diversity between PBM and Lexington. (<u>Id.</u>) This resulted in dismissal of Lexington from the action. (<u>Id.</u>)

4

context, the normal principles that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995).

Thus, when considering a dismissal or stay, "distinct features" of the Declaratory Judgment Act "justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River*." Id. at 286. Instead, the Brillhart factors guide the Court in its determination of whether to proceed with a federal declaratory judgment action when a parallel state court action is pending. Those factors are:

(1) whether the state has a strong interest in having the issues decided in its courts;

(2) whether the state court could resolve the issues more efficiently than the federal court;

(3) whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal court; and

(4) whether the federal action is mere procedural fencing in the sense that the action is merely the product of forum shopping.

Brillhart, 316 U.S. at 495; Great American Ins. Co. v. Gross, 468 F.3d 199, 211 (4th Cir. 2006) (citing Nautilus

5

Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir. 1994), overruled on other grounds, Wilton, 515 U.S. 277). The Brillhart factors apply here because the only remaining claim is the one for declaratory judgment.

II. The Brillhart Factors

A. State Interest

The Defendants argue that Virginia has an interest in deciding the issues in this action because it is likely that Virginia law will apply to the claim.[4] The state interest is particularly strong, say the Defendants, because jurisdiction is based on diversity, and no federal question exists. See Continental Casualty Co. v. Robsac Industries, 947 F.2d 1367, 1371 (9th Cir. 1991) ("Where, as in the case before us, the sole basis of jurisdiction is diversity of citizenship, the federal interest is at its nadir. Thus, the Brillhart policy of avoiding unnecessary declarations of state law is especially strong here"), overruled on other grounds, Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220 (9th Cir. 1998).

---

[4] The Defendants acknowledge that choice of law has not been decided in this action. (Def. Mem. at 7.) And, they concede that it is possible that Vermont law could apply because the insured facility is located in Vermont. (Id.) However, the Defendants assert that it is most likely that Virginia law will apply because Ace and Arch delivered the policies to PBM in Virginia. (Id.)

6

On the other hand, a federal court should only exercise its discretion to abstain from deciding questions of state law when "the questions of state law involved are difficult, complex, or unsettled." Gross, 468 F.3d at 211. In Gross, the Fourth Circuit explained that the "routine application of settled principles of insurance law" were not "difficult or problematic." Id. The Court of Appeals also expressed the view that the state's interest in having those issues decided by its own courts were not "sufficiently compelling to weigh against the exercise of federal jurisdiction." Id. Here, the Defendants have made no showing that the insurance issues in this action will involve complex or novel issues of state law that should be decided by a Virginia court. And, while there is a lessened federal interest because the action rests on diversity jurisdiction, this factor still weighs slightly in favor of exercising jurisdiction over the action because it does not present novel or complex state law issues.

B. **Efficiency**

In evaluating efficiency concerns, the Court should consider "whether the questions in controversy between the parties to the federal suit. . .can be better settled in the proceeding pending in the state court." Brillhart, 316 U.S. at 495; Gross, 468 F.3d at 211-12. And, this requires

consideration of the scope of the pending state court proceeding, including inquiry into "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceedings, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding." Brillhart, 316 U.S. at 495.

The Defendants argue that this court is not an efficient venue because it cannot resolve all the remaining claims against the three insurers. (Def. Mem. at 8.) Specifically, the Defendants argue, the Court cannot address coverage under the Lexington Policy, which is almost identical to the coverage under the Ace Policy and the Arch Policy. (Id.) Furthermore, only the state court can resolve issues relating to the B&M Coverage, found in the Lexington Policy. (Id.) In contrast, the Defendants assert, the state can rule upon all the remaining claims against all three insurers. The Defendants' point here is well taken. Certainly, two trials covering similar policies (with the exception of the B&M Coverage) is inefficient when the state court is capable of handling all issues in one trial.[5]

---

[5] The Defendants state that they will consent to the jurisdiction of the state court.

8

In response, PBM asserts that this Court can resolve the issues more efficiently than a state court "because it has almost completed the job." (Pl. Response at 16.) The parties have now completed discovery and the trial is set for April 19, 2010. The state court proceeding, in contrast, is in the initial pleading stage.[6] Indeed, the state court will not set the case for trial until May 1, 2010. Thus, a trial date will not be obtained in the state court case until after the case goes to trial in this Court.

On balance, this factor weighs in favor of granting the dismissal or stay. In <u>Centennial Life Ins. Co. v. Poston</u>, 88 F.3d 255, 258 (4th Cir. 1996), the Fourth Circuit upheld dismissal of an action, explaining that the efficiency factor was "particularly salient" because "the state court action contain[ed] a defendant and a number of issues not present in the federal action." Thus, the state court action could settle the entire matter while the federal action could not. <u>Id.</u> The Fourth Circuit also noted that significant discovery had already been taken in the state case. <u>Id.</u> While that is not the case here, the discovery taken for the federal action will be useful to

---

[6] Of course, it is because PBM erroneously filed in federal court and only recently realized its error that the state court proceedings are in this initial stage.

9

the parties in the state proceedings. And, overall, judicial economy and efficiency weigh in favor of staying the action because all parties can be involved in the state court action and all issues can be adjudicated there.

C. **Unnecessary Entanglement**

The Brillhart Court cautioned that:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

316 U.S. at 495. The Defendants argue that, because many of the coverage issues concern the same policy language, there is a danger of unnecessary entanglement between the state and federal court. PBM asserts that "[t]his argument strains credulity in light of ACE/Arch's admission that the policies are inherently different." (Pl. Response at 16.) PBM's assertion on this point misinterprets the Defendants' argument. Indeed, the policies are different only with regard to the B&M coverage. Otherwise, however, the Defendants argue that the policies are the same, and as a result, should all be adjudicated in one proceeding. And, of course, the state proceeding is the only proceeding that can resolve all the issues against all three insurers.

10

PBM further asserts that the possibility that both cases will go to trial and reach inconsistent results is too remote to justify dismissal of the case. (Pl. response at 17.) PBM bases this argument on the assumption that this Court's ruling will have a "profound impact on the strategy of the parties to the Richmond action," likely resulting in a settlement. (Id.) While PBM may be correct as to a possible settlement, the Court will not rely on the realization of that contingency and ignore the possibility of entanglement with the state court that may result from two trials on the same coverage issues. Thus, this factor weighs in favor of granting the dismissal or stay.

D.  **Forum Shopping**

This factor looks to whether "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved in a more favorable forum" or whether an action "was filed in an effort to obtain a federal forum in a case not otherwise removable." Nautilus, 15 F.3d at 380. The Defendants assert that PBM filed the action in this district to take advantage of the fast pace of litigation. (Def. Mem. at 9.) In support of this contention, the Defendants point out that PBM is located within the Western District of Virginia and the accident that caused the contamination

took place in Vermont. (Id.) And, the Defendants argue, PBM filed in this district, notwithstanding that the Court lacked jurisdiction over any dispute between PBM and Lexington and notwithstanding a venue selection provision in the Dornoch Policy designating a New York court as the proper venue for any disputes. (Id.)

In response, PBM argues that the Eastern District of Virginia is not an improper forum for this action. (Pl. Response at 17.) PBM reasons that the stay involving Dornoch's dismissal came only after serious consideration by this Court as well as the United State District Court for the Southern District of New York. (Id.) And, PBM argues that Lexington's citizenship was based on antiquated trustee laws that were not readily apparent when PBM filed the action. (Id. at 7.) Additionally, PBM states that it filed here because its counsel and registered agent are located in Richmond and it is located only thirteen miles outside the border of the Eastern District of Virginia. (Id. at 18.)

When all of these facts are considered, there is some, albeit very little, evidence that PBM engaged in "procedural fencing" by choosing to file in this district. Most importantly, PBM filed in this Court despite the venue

selection clause in the Dornoch Policy and despite a lack of jurisdiction over the dispute with Lexington.

Overall, the balance of Brillhart factors presents a close call. Significantly, the state court is the only court that can adjudicate the claims involving Ace, Arch and Lexington in one proceeding. And, the similar policies suggest that one proceeding may be more appropriate. On the other hand, the progress of the action in federal court weighs against granting the dismissal or stay. However, most of the progress is in discovery which can be used in the state proceedings. Thus, when all factors are considered, a stay is warranted in this case to preserve judicial resources and to prevent unnecessary entanglement with the state courts. The Supreme Court has explained that, when "the basis for declining to proceed is the pendency of a state proceedings, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." Wilton, 515 U.S. at 288 n.2. Thus, this action will be stayed pending resolution of the state proceeding.[7]

---

[7] Of course, Ace and Arch should consent to jurisdiction in the state action.

13

## CONCLUSION

For the foregoing reasons, the MOTION TO DISMISS OR STAY BY DEFENDANTS ACE AMERICAN INSURANCE COMPANY AND ARCH INSURANCE COMPANY (Docket Nos. 144 and 146) will be granted to the extent that the action will be stayed pending resolution of state court proceedings.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 1, 2010